AEDITA S. FISHER, Appellant, Respondent, v. HARRY C. (Also Known as " BUD ") FISHER, Respondent, Appellant.

First Department, March 2, 1928.

Husband and wife — separation — reference — error to refuse confirmation of referee's report on ground that referee asked that his fee be paid upon filing briefs — marriage — parties were married at sea by commodore of steamship — defendant at time was forbidden to marry by judgment of our courts — marriage at sea was legal — parties also became husband and wife by common-law marriage — action was brought on all grounds specified in Civil Practice Act, § 1161 — cohabitation with defendant after cruel and inhuman treatment not necessarily condonation — alimony of $400 per week not increased — award of counsel fees improperly made.

The report of a referee in a separation action should not be refused confirmation because the referee asked that his fee be paid upon the filing of briefs instead of upon the completion and filing of his report.

While ordinarily it is improper for a referee to make such a request, inasmuch as a refusal by one side or the other may result in prejudice against the side refusing, that rule cannot apply in a matrimonial action, for the husband in such an action is required to pay the fees of the referee and such prejudice cannot arise.

Furthermore, assuming that bias or prejudice did arise because the defendant did refuse to pay the fees at the time of filing the briefs, the defendant, by continuing with the reference after such request waived any disqualification based upon that ground.

At the time of the marriage of the parties to this action the defendant was under a disability in that a judgment rendered against him in this State in a divorce action brought by his former wife forbade him to marry. However, that judgment was not binding outside the jurisdiction of this State and, therefore, the marriage of the parties by the commodore of a steamship at a time when the steamship was forty miles out at sea from New York was valid. If that ceremony was not valid, it and the subsequent cohabitation and conduct of the parties in a jurisdiction where common-law marriages are recognized gave the parties the status of husband and wife.

This action was brought on all of the grounds mentioned in section 1161 of the Civil Practice Act and the finding of the referee that the defendant was guilty of cruel and inhuman treatment is supported by the evidence. The mere fact that the plaintiff cohabited with the defendant after he was guilty of cruel and inhuman treatment did not condone the offense so as to preclude the plaintiff from recovering a judgment of separation.

The referee recommended alimony at the rate of $400 per week, which alimony was $150 more per week than the temporary alimony awarded. The alimony recommended by the referee is sufficient to support the plaintiff in the position which she was accustomed to occupy in society. Therefore, the plaintiff was not entitled to have the award increased to $750 per week.

An allowance of $10,000 for counsel fees which was made after the referee reported was not authorized for the case was then closed and the rule is that no allowance may be made for counsel fees for services rendered or expenses incurred. An award might have been made in this case if after the order setting aside the

report had been entered an application had been made therefor on the ground that an appeal was to be taken or if the plaintiff had decided not to appeal but to go on with the trial before another referee.

APPEAL by the plaintiff from an order of the Supreme Court, entered in the office of the clerk of the county of New York on the 19th day of September, 1927, as resettled by an order entered on the 7th day of October, 1927.

Appeal by defendant from an order entered on the 6th day of October, 1927.

*Charles H. Tuttle* of counsel [*Paul N. Turner* and *Emily C. Holt* with him on the brief; *Davies, Auerbach & Cornell*, and *Paul N. Turner*, attorneys], for the plaintiff.

*George Gordon Battle* of counsel [*Isaac H. Levy* with him on the brief; *Battle, Miller, Levy & Van Tine*, attorneys], for the defendant.

McAVOY, J. The order appealed from by the plaintiff refused confirmation of a referee's report filed in a separation action, finding for plaintiff.

The ground upon which the refusal to confirm was made was that the referee became disqualified because he asked that his fee should be paid upon the filing of briefs instead of upon completion and delivery of his report. The court at Special Term did not pass upon the merits of the report as to whether it was contrary to law or contrary to the evidence, but contented itself with setting aside the report on the ground mentioned.

It has often been ruled that a referee is not entitled to any compensation until he files his report, no matter how long the reference takes and no matter how difficult the task. But nothing in the decisions, rules of court or statute prevents the parties from agreeing on mitigating the hardship of waiting through a long reference for compensation by payments as the hearings are held. A referee should not ask for this concession nor should he ask for a fixation of his fee. This ethic is established lest by reason of the refusal of one side or the other to accede the referee may become prejudiced. Besides it has been thought that where the decision runs against the side which refused the request, such party may believe that prejudice was brought about through such refusal to consent to the payment of extra fees or the payment of fees before the report is filed. Ordinarily it cannot be determined who is to pay the fees nor what the amount of the fees will be. In this case there was no uncertainty about either amount or person liable. The fee whatever its amount was to be paid by plaintiff's husband, since this was a matrimonial action and she had no funds. The amount also, according to the statement of the referee and the plaintiff's

attorney, was agreed on, and while this is denied by the defendant's attorney, the Special Term found with the statements of the plaintiff's affiants, and their affidavits make claim that this was the fact. In such an instance the principle or rule guiding the courts to void a reference for even possible prejudice would not apply, because no prejudice could result from a compliance with the request by the party who had to pay ultimately and no bias could occur where there was an agreement on the amount. However, assuming that bias or prejudice did arise because the defendant refused to pay the fees at the time of filing briefs the defendant's conduct in continuing with the reference after the request for advance payment, waived any disqualification based upon that reason. He could not await the outcome, and if it were in his favor abandon the claim of disqualification, and if decision were against him, assert its existence. A party waives any disqualification not involving corruption by proceeding with the reference after the cause for disqualification has become known to him. No protest was made at the time of filing briefs that the referee should not render a decision. No exception was taken to his request for fees. The rule as to setting aside a referee's report because of disqualification cannot be invoked by a party who knew of the disqualification and proceeded with the reference. *Consensus tollit errorem.* Former rulings to this effect are not lacking. (*Fudickar* v. *Guardian Mutual Life Ins. Co.,* 62 N. Y. 392; *Carroll* v. *Lufkins,* 29 Hun, 17; *Fischer* v. *Hayes,* 22 Fed. 92.)

Prejudice is not found nor bias shown in the decision and, therefore, the rights of the plaintiff should not be jeopardized merely to enforce a rule of conduct.

Confirmation of the report is objected to also on the grounds that the findings of fact are contrary to the evidence and that the conclusions of law are contrary to law.

There were two questions before the referee: (1) Were the parties legally married; and (2) was plaintiff entitled to a judgment of separation and an award for separate maintenance under the provisions of the statute? There was testimony which justified the findings of fact and these findings support the legal conclusions which the referee arrived at in awarding separate maintenance to plaintiff and adjudging her entitled to a separation.

The question as to the legality of the marriage of these parties arose over the fact that they were married by Commodore Hartley on board the steamship *Leviathan* on October 24, 1925. The vessel at that time was forty miles out at sea from New York. At the time of the marriage defendant was forbidden to marry under a judgment of the Supreme Court of this State because he had been divorced by his former wife. We conclude that Com-

modore Hartley was legally entitled to marry the parties, and that defendant being outside of the jurisdiction of the State of New York the judgment had no extraterritorial force, and, therefore, did not bind him. But if we assumed that the ceremony performed on board the steamship *Leviathan* was not valid, such ceremony, and the subsequent cohabitation and conduct of the parties in jurisdictions where common-law marriages are recognized gave the plaintiff and defendant the status of husband and wife.

The action on the merits was brought on all four grounds under section 1161 of the Civil Practice Act, that is, (1) cruel and inhuman treatment; (2) conduct rendering cohabition unsafe and improper; (3) abandonment; (4) failure to support.

The referee found that plaintiff was entitled to a judgment of separation on the first three grounds. The defendant claimed that plaintiff condoned the offenses against him in the complaint by cohabitation on June 11, 1926.

By a supplemental complaint plaintiff alleged a further act of cruelty on June 14, 1926, when defendant struck and injured her while in his apartment on Riverside Drive. Defendant denies this incident. The general purport of the proof is that defendant was guilty of a course of conduct during their married life which comes under the category of cruel and inhuman treatment. The referee was entitled to consider the general course of the husband's continued abuse and cruelty and that this course of conduct rendered cohabitation unsafe. The record shows various occasions on which abusive and violent behavior were indulged in by the defendant in his relations with the plaintiff.

The referee found on uncontradicted evidence that since shortly after the marriage of the parties the defendant has been at times under the influence of liquor; and during that period called the plaintiff vile and obscene names and struck her, and made it unsafe for her to live with him.

We are not in accord with the defendant's argument that cohabitation after acts of cruelty may be considered as condonation in the sense in which it would be after an act of adultery. We rule that endurance of unkind treatment in an effort to overcome its practice and continuance of cohabitation does not condone a course of inhuman conduct. The merits are thus with plaintiff.

There is also an appeal from such part of the order as refuses an increase of the alimony to $750 a week. The award recommended by the referee was $400 per week. Alimony *pendente lite* was fixed at $250 per week, at which rate defendant, since that order was made, has been making payments.

Plaintiff says she has no personal means of her own. Her testimony concerning her husband's finances was based upon statements

made to her by him and upon their scale of living. We think with these matters in view that $400 a week, over $20,000 a year, is ample support for a woman accustomed to her mode of living during the short period of her married life.

Defendant too appeals from an order which directs the payment to plaintiff of $10,000 additional counsel fees and $1,860 for future disbursements. Defendant had already paid counsel fees of over $10,500, $3,000 by voluntary arrangement, $7,500 by various orders of the court, the last having been made in April, 1927. The only services performed since the order of this court which reduced the $10,000 allowance to $2,000 (218 App. Div. 703) were a motion for reargument of that order which was denied, an inquest on a previous default, and the trial before the referee. Besides this, $500 was awarded to the attorney for the plaintiff at the time of opening the default. The additional counsel fee of $5,000 was awarded after the default was opened and the inquest set aside.

We think the last payment of $5,000 directed by the order of March, 1927, was sufficient to cover the trial of the case and the necessary subsequent proceedings.

As to this allowance of $10,000 after the referee reported there was no such award authorized. The case was then closed and the rule has been inflexible that no allowance may be made for counsel fee for services already rendered or expenses incurred. At the time this award was made the possibility of a new trial or an appeal from the decision was not before the court at Special Term. If after the order setting aside the report had been entered, an application had been made for additional counsel fee based on an appeal actually taken, some award might have been granted. If the plaintiff had decided not to appeal and to go on with the trial anew before another referee, the trial and preparation might have warranted additional fees and expenses for that purpose. We find no such basis here. We conclude that the order awarding counsel fees and expenses should be reversed and the motion therefor denied.

The order setting aside the report of the referee and denying the motion for confirmation should be reversed, with ten dollars costs and disbursements, and the motion for confirmation of the referee's report should be granted.

DOWLING, P. J., MERRELL, FINCH and PROSKAUER, JJ., concur.

Order setting aside report of referee and denying motion for confirmation reversed, with ten dollars costs and disbursements and motion granted.

Order awarding counsel fees and expenses reversed and motion denied.