James N. Gehrig, Children’s Court Judge as Acting Surrogate.
Applications were made for attorney’s fees pursuant to § 231-a of the Surrogate’s Court Act by
(1) Joseph F. Carlino and Louis Freedman, attorneys for five of eight residuary legatees.
(2) Monroe J. Cahn, attorney for the executors named in the will other than Morris Braloff.
(3) George R. Brennan, attorney for two of the eight residuary legatees, and
(4) Joseph Smith, attorney for one of the eight residuary legatees.
The services were rendered in connection with two matters consolidated for the purposes of trial — a proceeding to revoke letters of executorship and of trusteeship previously issued to Morris Braloff; and a trial of his wife’s claim against the estate in the amount of $185,000. In accordance with a decision dated September 26, 1955 (145 N. Y. S. 2d 457) Morris Braloff *148 was removed as an executor and trustee and his wife’s claim was allowed in the amount of $33,512.
Morris Braloff now for the first time raises an objection that fees be allowed because the court was “ without jurisdiction” in the removal proceeding. ' This question of jurisdiction was never raised in the removal or accounting proceedings.
Morris Braloff’s affidavit states: “ I oppose each of the fee applications in the above-entitled proceedings, brought under Surrogate’s Court Act, § 231-a, insofar as each of them concerns itself with an application for fees with respect to the removal proceedings, which proceedings — as I have been advised and as I shall, among other things, contend on my said appeal to the Appellate Division, were had without jurisdiction, by reason of failure to comply with the provisions of Article I of the Surrogate’s Court Act, as to the conditions under which the Children’s Court Judge might proceed with appropriate jurisdiction. Without arguing the question — which, I am advised, would not be appropriate in an affidavit — I point to the fact that there was no disqualification of the Surrogate in the removal proceeding, nor was there any certificate, as contemplated by Subd. 5 of § 8, in the removal proceeding, until well after the trial — i.e., on January 4, 1956 when it was too late — and, in addition, the other requirements of said Article I were not complied with. Of course, no stipulation could give jurisdiction, when the Court was not properly constituted as required by law. ’ ’
This statement does not accord with the factual material which the filed papers show. The Surrogate disqualified himself in the removal proceeding and filed the certificate contemplated by section 11 of the Surrogate’s Court Act, on July 29, 1954. As required by section 8 of the Surrogate’s Court Act, prior to the 1955 amendment, the matter was referred to the senior County Judge before whom it was until the Kate Braloff claim came on for trial, the Surrogate having disqualified himself there also. In the meantime and prior to the commencement of the trial, the Surrogate’s Court Act (§8, subd. 5) was amended to provide as follows:
“5. In the county of Nassau, such one of their number as may be designated by unanimous consent of the county judges and the children’s court judge as evidenced by their certificate filed with the cleric of the surrogate’s court and in the absence of any such designation, the county judges in their order of seniority of service and if there is no county judge, or if he is in like manner disabled, or is precluded or disqualified, by the judge of the children’s court and if there be no judge of the *149 children’s court, or he is in like manner disabled, or is precluded or disqualified, by the district attorney.” (Portion in italics added by L. 1955, ch. 338, eft. April 13,1955.)
Also prior to the trial the attorneys for all the parties (including Morris Braloff) entered into the following stipulation:
“ The undersigned being attorneys for all appearing parties in the above entitled proceeding consent and agree to proceed with the trial of this proceeding before Hon. James N. Gehrig, Acting Surrogate, on Wednesday, May 4, 1955, at 2 p.m. and further consent and agree that the removal proceeding now before Hon. Norman P. Lent, Acting Surrogate, be consolidated with this proceeding and that both proceedings be tried together before Hon. James N. Gehrig, Acting Surrogate, on Wednesday, May 4, 1955 at 2 p.m.”
It is not stated what “ other requirements of said Article I were not complied with ”. But even if we assume that other ‘ ‘ requirements were not complied with ’ ’ there is here no question of consanguinity, corruption, absence of original constitutional or statutory authority or any other factor that would render invalid the determination of one of the judges specifically designated by subdivision 5 of section 8 of the Surrogate’s Court Act to sit upon the Surrogate’s disqualification. The objection, if any were warranted, was certainly not taken within the time contemplated by section 7 of the Surrogate’s Court Act, which reads:
“ Disqualification: when objection must be taken. An objection to the power of a surrogate to act, based upon a disqualification, is waived by an adult party to a special proceeding unless it is taken at or before the joinder of issue by that party, or, where an issue is not framed, at or before the submission of the matter or question to the surrogate.”
Instead of voicing objection as above provided for, the parties affirmatively stipulated to try the removal proceeding before “ Hon. James N. Gehrig, Acting Surrogate ”, Having done so and having proceeded through trial, decision and decree without objection, they waived any objection they might have had. Section 7 of the Surrogate’s Court Act reflects the rule generally prevailing. The comprehensive note in American Law Reports (Vol. 144, p. 1207) reads: “Ordinarily, objections to the appointment or election of a special, substitute, or pro tern judge may be waived by proceeding in the cause without raising them at or before trial, most of the cases holding that it is too late to do so after trial, by motion in arrest of judgment or similar motion.” (P. 1217.)
*150 1 ‘ Where there is original constitutional or statutory authority for an election or appointment of a special, substitute, or pro tern judge, and the record does not affirmatively show that the person in question could not, in any event, legally perform the functions of such a judgeship, it is the general rule that objections to the title or authority of such a judge cannot be first made upon appeal.” (Pp. 1219, 1220.) (See, also, Fisher v. Fisher, 223 App. Div. 19; Hampton Bays Supply Co. v. Adler, 3 Misc 2d 224.)
The language in the Fisher case (p. 21) is appropriate: “ He could not await the outcome, and if it were in his favor abandon the claim of the disqualification, and if decision were against him, assert its existence. A party waives any disqualification not involving corruption by proceeding with the reference after the cause for disqualification has become known to him. No protest was made at the time of filing briefs that the referee should not render a decision. No exception was taken to his request for fees. The rule as to setting aside a referee’s report because of disqualification cannot be invoked by a party who knew of the disqualification and proceeded with the reference. Consensus tollit errorem. Former rulings to this effect are not lacking. (Fudickar v. Guardian Mutual Life Ins. Co., 62 N. Y. 392; Carroll v. Lufkins, 29 Hun, 17; Fischer v. Hayes, 22 Fed. 92.) ”
Citing the provisions of section 13 of article "VT of the New York State Constitution, Morris Braloff attacks the constitutionality of subdivision 5 of section 8 of the Surrogate’s Court Act. Nowhere in the section of the Constitution relied on, or in any other section, is the Legislature prohibited from providing that in the event of the Surrogate’s disability, a County Court Judge, Children’s Court Judge or district attorney may act as Surrogate. In the absence of such restriction, limitation or prohibition, the Legislature had the power to enact the statute in question. “ Except as limited or restricted by the State and Federal Constitutions, this power of the Legislature is absolute, plenary, and unlimited, and may or may not be exercised as the legislators choose.” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 2, entitled ‘ ‘ Lawmaking power vested in Legislature ”.) See, also, annotations there cited; McKinney’s Cons. Laws of N. Y., book 2, part 1, Constitution, art. III, § 1, “ Legislative power ” and cases there cited.) Section 8 of the Surrogate’s Court Act is derived from sources dating back more than 125 years which have similarly provided for alternate Surrogates sitting in the event of the Surrogate’s disqualification. In People ex rel. Oakley v. Petty (32 Hun 443) *151 decided in 1884, the General Term, Second Department, stated at page 446:
‘ ‘ The legislature had power to make the district attorney in special cases acting surrogate. The clause providing for a special surrogate does not prohibit the appointment of a court or persons who shall in specified cases of disability perform the duty of the surrogate. It is a matter of necessity. A surrogate and special surrogate may both be related or interested in a particular matter. A designation of the district attorney as a person to perform the duty in the particular case is not prohibited either by the present or by any former constitution. He has stood upon the statute book of the State as an alternate surrogate for over fifty years (chap. 320, Laws of 1830, § 21), and has constantly acted whenever the exigency happened which rendered it necessary.”
This decision has stood unchallenged since it was written and is in accord with the prior quoted rules governing the determination of the constitutionality of the section attacked.
The belated objection of Morris Braloif to the court’s jurisdiction is not well taken.
Appeals in the “ principal ” proceedings have been filed as follows:
1/23/56 by Morris Braloff from order of Acting Surrogate Gehbig dated December 29, 1955 which revoked letters testamentary and letters of trusteeship except that part which directs dismissal of application of respondents Shmerler and Greenberg as executors and trustees for removal of their coexecutor, Morris Braloff.
1/30/56 by Herbert Greenberg and Maxwell Shmerler as executors and trustees, from decree of December 29, 1955 which decreed that application of said executors for the removal of coexecutor, Morris Braloff, should be dismissed.
2/2/56 by special guardian on law and facts from decree of December 29, 1955 which revoked letters testamentary and letters of trusteeship to Morris Braloff, etc.
2/10/56 by Herbert Greenberg and Maxwell Shmerler as executors, on law and facts from order of January 30, 1956 granting claim of Kate Braloff of $33,512, with interest at 6% from August 12, 1953, and costs of $2,000.
2/28/56 by Kate Braloff on law and facts from order of January 30,1956 permitting credit of $103,368, thereby reducing balance due claimant to $33,512.
3/5/56 by special guardian on law and facts from order of January 30, 1956 granting claim of Kate Braloff of $33,512 with interest at 6% and taxed costs of $2,000.
*152 The Attorney-General, the attorney for the remaining executors, the remaining executors themselves, and the attorney for the removed executor ask that attorney’s fees be fixed after the determination of the appeals. Some of the applications have now been withdrawn. Others are still pending. Under all the circumstances, the applications pending are prematurely made and are dismissed without prejudice to-renewal after final determination of the pending appeals. Leave to withdraw the remaining applications is granted similarly without prejudice to renewal.
Settle decree in each proceeding in accordance with this decision.