■ In the Matter of FRANK C. McGIRR, Respondent, v DIVISION OF VETERANS AFFAIRS, EXECUTIVE DEPARTMENT, STATE OF NEW YORK, et al., Appellants.—In a proceeding pursuant to CPLR article 78 to review a determination of appellant Votto, Director of the Division of Veterans Affairs, the appeal is from a judgment of the Supreme Court, Richmond County, dated February 23, 1976, which, after a hearing, *inter alia,* directed petitioner's reinstatement to his position as a veteran's counselor. Judgment reversed, on the law and the facts, without costs or disbursements, and proceeding dismissed on the merits. Upon our second prior consideration of this matter, we reversed a judgment and remanded to Special Term for resolution at a hearing of the question of fact as to whether petitioner had complied with 4 NYCRR 5.3 (d) *(Matter of McGirr v Division of Veterans Affairs, Executive Dept., State of N. Y.,* 47 AD2d 541, 542). Special Term, after noting its findings of Fact Nos. 3, 4, 5 and 6, relating to the several telephone calls made by petitioner reporting his illness, and his physician's letter setting forth his medical condition, concluded that the absence "can in no sense be termed an absence 'without an explanation' as specified in 4 NYCRR 5.3 (d)." That opinion goes on to state: "This determination, flowing necessarily from the findings of fact made at the direction of the Appellate Division, leaves nothing to be determined at any hearing which this Court might order to be held before the Division of Veterans Affairs." On the contrary, we find upon our review of the minutes of the hearing that clearly petitioner was both "absent without leave" and without a sufficient "explanation" for a period in excess of 10 "work days." The evidence establishes that, on or about December 7, 1971, the petitioner made a reservation to go to Florida, where he had owned a home for the past seven years. Thereafter, on December 10, 1971, he visited his physician. On December 13, 1971 petitioner reported to work as a veteran's counselor at the Staten Island office of the Division of Veterans Affairs. He made no mention to anyone of his visit to the doctor or of any need for sick leave. The next day, petitioner called his office and stated that he was "sickly." According to petitioner, he did not advise his office how long he expected to be on sick report. Later that day he left for his home in Florida. On December 20, 1971 the division received a letter from petitioner's doctor stating that petitioner has been under his care for a respiratory infection and that, in his opinion, his health would be substantially benefited by the removal to a warmer climate. On or about December 21, 1971, petitioner again called his office to state he was "still ill." He did not mention that he was in Florida. According to the petitioner, he did not advise his office how long he expected to remain absent. On Monday, December 27, 1971, petitioner failed to report to work. He did not call in sick or offer any explanation for his absence. Two days later, on December 29, 1971, a letter from the deputy director of the division's New York City office was sent to the petitioner's home on Staten Island. It requested that petitioner have his doctor submit a report indicating the diagnosis of petitioner's present illness. Petitioner testified that he received the letter in Florida on January 3 or 4, 1972 and that he sent a copy of the letter to his doctor with a note asking the doctor to "do as he chose to do with the letter." Petitioner stated that he did not request the doctor to do anything with the letter. A few days later, on January 7, 1972, petitioner called the Albany office of the division and asked to speak to a

Mr. Parkinson, the division's director of publicity. Mr. Parkinson was unavailable so petitioner spoke with Mr. Thomas Manning, a deputy director of the division. Petitioner was not "sure" whether he told Mr. Manning that he was in Florida. He did ask what could be done about arranging a one- or two-month leave of absence, with or without pay. Mr. Manning indicated that he thought that petitioner, "probably [could] not get help." Thereafter, by letter dated January 12, 1972, the petitioner was advised that he had resigned his position as a veteran's counselor pursuant to 4 NYCRR 5.3 (d). Petitioner received the letter about the third week of January. On or about February 3, 1972 he received a copy of a letter dated January 13, 1972, which his doctor had sent to the division. The letter was generally sarcastic, stating that "it is ridiculous for medical reports to be sent to laymen", and did not include any diagnosis of the petitioner's alleged malady. Petitioner also received from his doctor a medical report listing the results of a physical examination which had been conducted in December, 1971. He said he forwarded this report to his union representative but did not know whether the representative had ever brought the report to the attention of the division. Upon the foregoing review of the evidence, it is obvious that petitioner was absent without leave and without any explanation therefor for at least a period of 10 workdays. Except for his call to Albany on January 7, 1972, petitioner was not heard from by anybody in the division from December 21, 1971 through the end of January, 1972. One would expect that, at a minimum, a person with an extended illness would either "call in" once a week or advise his office of the nature and extent of the illness. It strains credulity to believe that the January 7, 1972 call to the division's director of publicity in Albany constituted notification that the petitioner was still sick. Indeed, there is nothing in the record to suggest that Mr. Manning, who took the call intended for Mr. Parkinson, was told that the petitioner was ill. Under the facts of this case, *Matter of Johnson v Director, Downstate Med. Center, State of N. Y.* (52 AD2d 357) does not require petitioner's reinstatement. This court held in *Johnson* (p 369) that 4 NYCRR 5.3 (d) of the Rules and Regulations of the Department of Civil Service "as applied to [the] petitioner" therein, was unconstitutional. The basis of that ruling was the fact that the petitioner therein had not been accorded due process by reason of the fact that his employment had been terminated without his being allowed a hearing on the validity of the reason for the termination. In the case at bar, this court had remanded petitioner's CPLR article 78 proceeding to Special Term for a hearing to resolve factual questions relating to petitioner's absence. Petitioner had previously obtained a judgment directing the Division of Veterans Affairs to grant him a hearing, but nevertheless appealed from the judgment because it did not direct his reinstatement. A full hearing was held before Special Term in May and June, 1975, and a decision favorable to petitioner was rendered on December 5, 1975. Petitioner has acquiesced in having his case heard through judicial rather than administrative proceedings, has received a full hearing with a more favorable burden of proof requirement (the division had to satisfy a "preponderance of the evidence", rather than a "substantial evidence" standard), and has in no way been denied due process of law. The parties to a lawsuit are free to chart their own course and may fashion the basis upon which a particular controversy will be resolved (see *Cullen v Naples*, 31 NY2d 818). Margett, Acting P. J., Hawkins and Mollen, JJ., concur; Rabin, J., dissents and votes to affirm the judgment, with the following memorandum: I dissent and vote to affirm. In my opinion, Special Term's finding, as the trier of the facts, is amply supported by the record.