OPINION OF THE COURT
Edward H. Lehner, J.
Before me is a regrettable bitter dispute amongst members of the Millinery Center Synagogue (the Synagogue) with respect to the retention of its Rabbi, Hayim S. Wahrman (the Rabbi).
By stipulation dated February 4, 1994, the Synagogue and the Rabbi agreed to submit to the Rabbinical Court of Machón Mahoyroa, of Monsey, New York (the Beth Din) the issue of whether the Board of Trustees of the Synagogue (the Board) was authorized to dismiss the Rabbi "for causes of insubordination and gross malfeasance”. By decision dated February 22, 1994, the Beth Din (which consisted of three rabbis) determined that the Board was within its right not to continue the employment of the Rabbi.
In opposition to the Board’s application to confirm this determination, the Rabbi maintained that since only the *1077 membership of a synagogue may remove its Rabbi, the decision upholding the right of the Board to discharge him was against public policy.
In confirming the decision of the Beth Din (NYU, Sept. 19, 1994, at 27, col 1), I found that, in light of the Rabbi’s stipulation consenting to binding arbitration before that forum after the subject dispute arose, the Rabbi was bound by its determination, and that there was no strong public policy prohibiting such an agreement (citing Matter of Sprinzen, 46 NY2d 623 [1979]).
Before me now is a petition in what purports to be a special proceeding, but seeks various relief only available in a plenary action. In an effort to seek an end to this continuing controversy, I will convert, pursuant to CPLR 103 (c), two of the claims raised in the rambling petition to a plenary action for a declaratory judgment, to wit, whether the purported membership meeting of September 1, 1994 at which the Rabbi was rehired was valid, and whether proxies were validly employed for the December 7, 1994 membership meeting.
THE SEPTEMBER 1,1994 MEETING
Proof has been submitted that 10 purported members of the Synagogue signed a "Notice of Special Meeting” in which they requested that a meeting be held on September 1, 1994 "concerning the tenure of our rabbi”. It is alleged that when the Board failed to call a meeting after receipt of the foregoing request, the notice was sent to members by mail on August 26, 1994 by a member of the Synagogue from a list thereof provided by the Rabbi. The Board maintains that it declined to send the notice because it could not verify that the names on the notice were in fact members in good standing, and that notices to all members were not in fact mailed on August 26, 1994 as alleged by petitioners.
Article VII of the bylaws of the Synagogue provides that special meetings of the congregation may be called by "any ten members in good standing” and that at least five days’ notice of the meeting shall be given to the members by the recording secretary.
Since it is clear that the notice was not sent by the secretary of the Synagogue, as required by the bylaws, to the members in good standing as of the date of mailing, I declare that the meeting of September 1, 1994 was not validly held. If in fact the secretary of the Synagogue failed to comply with *1078 the ministerial obligation set forth in the bylaws to convene a meeting after receiving a request from 10 members, the remedy of the petitioners was to bring a special proceeding in mandamus to require performance.
THE MEETING OF DECEMBER 7, 1994
A meeting of the membership was held on December 7, 1994. The ballot for the meeting listed two questions, the first being whether to permit proxy voting at the meeting, and the second being a vote on the question of "confidence with the officers and trustees”, it being specifically stated that a vote of "no confidence” would mean that all of the current officers and trustees would resign and be replaced by a named temporary committee, and that the Rabbi would be rehired.
Prior to the mailing of the notice of meeting, the attorneys for the respective parties met in court and informally agreed to permit proxy voting. Although petitioners subsequently withdrew their agreement on this point, the notice that was sent out permitted members to vote by proxy.
By agreement, petitioners’ counsel served to count the ballots at the meeting. He certified that of the votes cast in person, 7 were in favor of the Board’s action, while 48 were opposed. When the proxies were added, the final vote was 64 in favor and 54 opposed. Apparently the vote also showed approval of proxy voting.
Since I find that the procedure of providing for proxy voting on the issue of whether or not to provide for proxy voting is improper and of no effect, the question of whether or not proxy voting was authorized requires an examination of the law in effect at the time of the mailing of the notice of meeting.
The first source for such examination, the bylaws of the Synagogue, contains no mention of proxy voting. It is noted that in Feldbin v Temple Beth-El (210 AD2d 374) it was held that the provisions of the Religious Corporations Law dealing with the conducting of membership meetings are inapplicable to a meeting held on the question of the dismissal of a rabbi when the bylaws "specifically provided for the manner in which special meetings were to be called and held”.
With respect to the Religious Corporations Law, the only mention of proxy voting therein is in sections 207 and 208. In the former it is provided that, while the right of members to *1079 vote at meetings shall be fixed in the bylaws, "every member of such congregation entitled to vote at any meeting thereof may vote by proxy on any proposition to sell, mortgage or lease any of its property or for its consolidation with one or more religious corporations of the Jewish faith, or * * * [in the City of New York] in any election of trustees or officers”. Section 208 deals further with voting on consolidation.
The Board contends that since the vote at the meeting would determine whether or not the trustees would remain in office, this was therefore a meeting to deal with the election of trustees, at which proxy voting is authorized under Religious Corporations Law § 207. I find no merit to that position as the essence of the meeting was clearly whether or not to rehire the Rabbi, with the Board merely stating its position that the members thereof would immediately resign if the Synagogue membership voted to rehire him.
There being no provision in the Religious Corporations Law or the bylaws dealing with the issue at hand, I must next, pursuant to Religious Corporations Law § 2-b, examine the Not-For-Profit Corporation Law as that section makes said law, with certain designated exceptions, applicable to every corporation to which the Religious Corporations Law applies, unless there is a conflict. Crucial to this application is the provision of paragraph (c) of subdivision (1) of section 2-b which makes section 609 of the Not-For-Profit Corporation Law inapplicable to corporations formed under the Religious Corporations Law. Section 609 is the section of Not-For-Profit Corporation Law dealing with proxy voting and it states that voting in such manner is authorized unless the certificate of incorporation or bylaws provide otherwise. It is noted that the interplay of the Religious Corporations Law and the Not-For-Profit Corporation Law is consistent with prior law as section 19 of the former General Corporation Law provided that " '[e]very member of a corporation, except a religious corporation, entitled to vote at any meeting thereof may vote by proxy.’ ” (See, Matter of Flynn v Kendall, 195 Misc 221 [Sup Ct, Kings County 1949].)
From the foregoing, I conclude that, unless provided in the certificate of incorporation or bylaws, proxy voting by members of a religious corporation is not authorized except for the limited purposes set forth in Religious Corporations Law § 207. Accordingly, the use of proxies for the meeting of December 7, 1994 was not permitted, with the consequence that the votes cast by proxy thereat were not properly *1080 counted. (Compare, Matter of Frankel v Kissena Jewish Ctr., 144 Misc 2d 548 [Sup Ct, Queens County 1989], which does not discuss the fact that section 609 is inapplicable to religious corporations.)
Although this proceeding, commenced on November 30, 1994, was instituted prior to the December 7, 1994 meeting, the question of proxy voting was put in issue in the petition and the parties submitted papers subsequent to the meeting setting forth the results thereof and their respective contentions. Thus, I declare that the majority of votes validly cast at that meeting were in opposition to resolution No. 2, and consequently the vote of "no confidence” and desire to rehire the Rabbi passed.
The balance of the relief sought in the petition is denied. The cross motion to dismiss is granted and denied to the extent set forth above with respect to the relief sought by petitioners.